IN THE CIRCUIT COURT FOR THE
FOURTH JUDICIAL CIRCUIT, IN AND
FOR NASSAU COUNTY, FLORIDA

CASE NO.: 2013-CA-000583
DIVISION: A

AUTUMN M. NICKS,

    Plaintiff,

v.

CREDIT CONTROL SERVICES, INC. D/B/A
CREDIT COLLECTION SERVICES,

    Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, AUTUMN M. NICKS ("AUTUMN NICKS") by and through her undersigned counsel, sues Defendant, CREDIT CONTROL SERVICES, INC. D/B/A CREDIT COLLECTION SERVICES ("Defendant" or "CCS").

## GENERAL ALLEGATIONS

1. Plaintiff is a resident of Nassau County, Florida.

2. Defendant, CCS, is foreign corporation, doing business in Nassau County, Florida.

3. Its principal place of business is in the State of Massachusetts and it is incorporated in Delaware.

4. Venue is proper in Nassau County, Florida because that is where the cause of action occurred.

5. Plaintiff allegedly incurred a financial obligation that was primarily for personal, family or household purposes and is therefore a "debt" as that term is defined by 15 U.S.C. §1692a(5).

6. Plaintiff in fact did not incur any such debt.

7. Plaintiff was a victim of identity theft.

8. Numerous false accounts appeared on her Equifax credit report.

1

9. Plaintiff filed a police report.

10. Plaintiff prepared an Identity Theft Affidavit.

11. Plaintiff disputed the false accounts with Equifax. Although the dispute letter Plaintiff mailed to Equifax is dated June 7, 2013, it was not mailed until July 3, 2013 after Plaintiff received the Equifax Credit File dated June 13, 2013. A true and correct copy of a dispute is attached as **EXHIBIT "A"**[1] and incorporated herein by reference.

12. In her dispute, she forwarded the police report and identity theft affidavit to Equifax.

13. Subsequently, Equifax contacted furnishers including Florida Power & Light to notify them of Plaintiff's dispute to Equifax.

14. It is unknown whether Florida Power & Light or its debt collectors contacted Equifax to ensure that they received a copy of all relevant information submitted with the dispute.

15. As a result of an investigation by Equifax and/or Florida Power & Light, Equifax agreed to remove the tradeline relating to Florida Power & Light from its credit report it reported on Plaintiff. A true and correct copy of a dispute is attached as **EXHIBIT "B"** and incorporated herein by reference.

16. Supposedly, Defendant purchased or was assigned or otherwise was collecting the debt and began collection activities against Plaintiff.

17. Plaintiff disputed directly to Defendant, who was collecting the debt for FP&L. A true and correct copy is attached as **EXHIBIT "C"** and incorporated herein by reference.

18. As part of her dispute, Plaintiff directed the defendant to provide validation of the debt but further advised it not to contact her any further to collect the debt as she did not intend to pay it.

19. This debt is allegedly for electricity used in Fort Myers, Florida.

20. Plaintiff has never been to Fort Myers and has not contracted with FP&L for services there.

21. Although Defendant provided a document suggested that it was in validation of the

---

[1] Exhibits have been redacted to remove any account numbers or Social Security numbers.

debt, the Defendant later contacted Plaintiff again in an attempt to collect the debt.

22. A true and correct copy of the validation is attached as **EXHIBIT "D"** and incorporated herein by reference.

23. A true and correct copy of a collection letter sent after the validation and sent after Defendant was advised to stop contacting Plaintiff is attached as **EXHIBIT "E"** and incorporated herein by reference.

24. This put Plaintiff in fear that she would not be able to obtain financing for a home.

25. Plaintiff delayed in seeking financing for a new home as a result and during the interim, the interest rates have increased significantly which will cost plaintiff thousands and thousands of dollars over the life of a loan. For example, one percent of interest amortized over 30 years for a loan of $150,000 is equivalent to interest payments of $23,685.34.

26. Plaintiff has suffered actual damages as a result of these illegal collection communications by this Defendant in the form of anger, anxiety, emotional distress, fear, frustration, upset, humiliation, embarrassment, amongst other negative emotions.

## CAUSES OF ACTION
### COUNT I
### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. § 1692 ET SEQ.

27. The allegations in paragraphs 1 through 26 of this Complaint are re-alleged and incorporated herein by this reference.

28. This action arises out of Defendant's violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA").

29. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

30. The acts and omissions of Defendant and its agents constitute numerous and multiple violations of the FDCPA with respect to the Plaintiff.

31. CCS is a debt collector as defined under 15 U.S.C. § 1692a.

32. The Defendant violated 15 U.S.C. § 1692c(c) by contacting the Plaintiff after the

3

Plaintiff had requested the Defendant cease communication with the Plaintiff.

33. Defendant has also violated the FDCPA if it made a false representations as to the legal status of a debt in connection with the sale, transfer or assignment of a debt to another debt collector, with the knowledge that the purchaser, transferee or assignee intends to initiate or continue attempts to collect the debt.

34. As a result of CCS's failure to comply with the requirements of applicable law, AUTUMN NICKS has suffered, and continues to suffer actual damages as set forth above.

35. As a result of Defendant's violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); (2) actual and compensatory damages; and, (3) reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3), from Defendant.

## COUNT II
## VIOLATIONS OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT

36. The allegations in paragraphs 1 through 26 of this Complaint are re-alleged and incorporated herein by this reference.

37. AUTUMN NICKS is a Consumer as defined under Fla. Stat. § 559.55.

38. CCS is an out of state Consumer Debt Collector as defined under Fla. Stat. §559.55.

39. CCS violated Florida's Consumer Collection Practices Act, Fla. Stat. § 559.72, by, among other things:

   a. claiming, attempting, or threatening to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist, and

   b. willfully communicate with the debtor or any member of his family with such frequency as can reasonably be expected to harass the debtor or his family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of his family;

   c. claim, attempt, or threaten to enforce a debt when such person knows that the debt is

4

not legitimate or assert the existence of some other legal right when such person knows that the right does not exist;

40. As a result of CCS's failure to comply with the requirements of applicable law, AUTUMN NICKS has suffered, and continues to suffer actual damages as set forth above.

41. AUTUMN NICKS requests her attorney's fees pursuant to Fla. Stat. § 559.565 and Fla. Stat. § 559.77.

## PRAYER

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

**On the First Claim for Relief [FDCPA]:**

A. for an award of actual damages to Plaintiff and against Defendant pursuant to 15 U.S.C. § 1692k(a)(1) in an amount in excess of $15,000, exclusive of attorney's fees and costs;

B. for an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A) against Defendant;

C. for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against Defendant; and

D. for such other and further relief as the may be just and proper.

**On the Second Claim for Relief [FCCPA]:**

A. Awarding actual damages to AUTUMN NICKS in an amount in excess of $15,000, pursuant to Fla. Stat. §559.77;

C. Reasonable Attorney's fees, pursuant to Fla. Stat. §559.77;

D. Costs and expenses incurred in the action pursuant to Fla. Stat. §559.77;

E. Statutory damages of up to $1,000, pursuant to Fla. Stat. §559.77;

F. Punitive damages, pursuant to Fla. Stat. §559.77;

G. Such equitable relief as this Court deems necessary or proper, including enjoining the defendant from further violations of this part, pursuant to Fla. Stat. § 559.78

PLAINTIFF REQUESTS TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

DATED this 4th day of October, 2013.

                                              Respectfully submitted:

                                              STEVEN M. FAHLGREN, ESQUIRE
                                              Florida Bar No.: 0008450
                                              Law Offices of Steven M. Fahlgren, P.A.
                                              552382 U.S. Highway 1 North
                                              Hilliard, Florida 32046
                                              Telephone: (904) 845-2255
                                              Facsimile: (904) 845-3934
                                              Attorney for Plaintiff
                                              www.ForTheConsumer.com
                                              Primary email: sfahlgren@ForTheConsumer.com
                                              Secondary email: kparks@ForTheConsumer.com